UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO A. LEE,

        Plaintiff,

Case No. 1:13-cv-329

Hon. Robert J. Jonker

v.

M. RICHARDSON, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Richardson, Labelle, Greenfield, Shroad, Turner, Ault, Huss, Stoddard, Finco and Heyns (docket no. 93).

    **I.**    **Background**

Plaintiff Mario Lee filed his original complaint on March 27, 2013 alleging that while he was incarcerated at Ionia Correctional Facility (ICF), Corrections Officer (CO) Michael Richardson withheld food trays on numerous occasions. *See* Compl. (docket no. 1). Richardson consented to plaintiff filing an amended complaint in which he named nine additional defendants. *See* Order (docket no. 22); Amend. Compl. (docket no. 23). The claims set forth in plaintiff's amended complaint are summarized as follows.

Plaintiff alleged that CO Richardson subjected him to cruel and unusual punishment in violation of the Eighth Amendment "by repeatedly withholding eleven meals from plaintiff over a 21-day period in September 2012, and an additional three meals from plaintiff over a 2-day period

in March 2013, for the sole purpose of imposing illegal summary punishment upon plaintiff for verbalizing his intentions to exercise protected rights secured to plaintiff by the First and Fourteenth Amendments of the United States Constitution, namely, his right to file grievances on his own behalf." Amend. Compl. (docket no. 23, PageID.78). This treatment allegedly caused plaintiff "to lose three pounds, suffer severe abdominal pain, headaches, dizziness, loss of sleep, fright, anxiety and panic attacks, and experience grievous harm to his First and Fourteenth Amendment rights." *Id.*

Plaintiff also alleged that on September 12th, 17th and 20th, 2012, Richardson "intentionally withheld both breakfast and lunch meals from plaintiff solely to punish plaintiff from complaining to the housing unit sergeant about the defendant Richardson arbitrarily denying plaintiff's out-of-cell exercise opportunity on 9/8/2012 and for plaintiff stating his intent to file a grievance against the defendant if he (plaintiff) did not receive his scheduled out-of-cell exercise in the segregation cage." *Id.* at PageID.78-79. Plaintiff also alleged that for these same reasons, Richardson denied him: breakfast and lunch meals on September 25, 2012; breakfast and lunch meals on September 28, 2013; and, breakfast on October 2, 2012. *Id.* at PageID.79.

Plaintiff filed several grievances against Richardson and notified unit supervisors Sgt. Jeremy LaBelle, Sgt. John Greenfield, Sgt. Philip Shroad, Prisoner Counselor (PC) Marcus Turner, Assistant Resident Unit Supervisor (ARUS) Ault, Deputy Warden Erica Huss, and Warden Cathy Stoddard (referred to collectively as the "ICF supervisory defendants") about CO Richardson's misconduct. In this regard, plaintiff alleged that "on or about September 12, 2012" and "on various other days and times" until October 2, 2012, he notified each of the supervisory defendants of Richardson's actions and asked that corrective action be taken to stop those actions. *Id.* at

PageID.80. However, each of the ICF supervisory defendants "responded unreasonably" by failing to stop Richardson's behavior or "take alternative measures to ensure that plaintiff was fed," causing plaintiff to suffer constitutional violations. *Id.* After plaintiff filed the grievances and notified the ICF supervisory defendants, Richardson "refused to feed plaintiff again at lunch on March 22, 2013, and breakfast and lunch on March 23, 2013 bringing the total number of meals withheld from plaintiff as a means of punishment and not for legitimate reasons to fourteen." *Id.* at PageID.79. Plaintiff alleged that the ICF supervisory defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment "by being deliberately indifferent to, and failing to correct" Richardson's illegal actions after being notified that "Richardson was regularly implementing food deprivation against plaintiff as a form of punishing plaintiff for verbalizing his intent to exercise protected rights" to file grievances. *Id.*

Plaintiff also alleged that defendants Deputy Warden Huss, Warden Stoddard, MDOC Deputy Director Finco, and MDOC Director Heyns subjected him to cruel and unusual punishment in violation of the Eighth Amendment by being deliberately indifferent to, and failing to prevent "widespread abuse" despite knowledge that meals were regularly being withheld from prisoners in segregation at ICF and implementing "a department custom" which allowed that to occur. *Id.* at PageID.80-81.

To summarize, plaintiff alleged that Richardson withheld 14 meals over a seven-month period[1] and that the other defendants failed to stop this behavior. Plaintiff seeks monetary and injunctive relief against defendants.

---

[1] September 12, 2012 (breakfast and lunch); September 17, 2012 (breakfast and lunch); September 20, 2012 (breakfast and lunch); September 25, 2012 (breakfast and lunch); September 28, 2012 (breakfast and lunch); October 2, 2012 (breakfast); March 22, 2013 (lunch); and March 23, 2013 (breakfast and lunch).

## II. Defendants' motion for summary judgment

### A. Legal standard

Defendants have moved for summary judgment on various grounds. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Timeliness of plaintiff's response brief

Defendants contend that the Court should disregard plaintiff's response brief because it was untimely, i.e., the Court granted plaintiff an extension of time to file his response by May 13, 2016, but he did not file until May 19, 2016. Defendants' contention is without merit. Plaintiff's certificate of service stated that he delivered the response to prison authorities on the due date of May 13, 2016 (docket no. 105) and the envelope bears a postmark of Monday, May 16, 2016 (docket no. 104, PageID.588). Plaintiff had no control over when prison authorities mailed his response. Because plaintiff is a prisoner, the Court will consider the response filed when he submitted it to prison authorities for mailing pursuant to the federal *pro se* prisoner mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) ("notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk"); *Scuba v. Brigano*, 527 F. 3d 479, 484 (6th Cir. 2007) (*pro se* prisoner's motion for an extension of time to file objections is subject to the prisoner mailbox rule); *Lyons-Bey v. Pennell*, 93 Fed. Appx. 732 (6th Cir. 2004) (*pro se* prisoner mailbox rule applied to response to motion to dismiss civil complaint).

### C. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S.

at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances.  *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not

6

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

MDOC records reflect that plaintiff is well-acquainted with the MDOC's grievance procedure, having filed approximately 91 grievances between March 24, 2010 and May 11, 2015. *See* MDOC Step III Grievance Report (docket no. 94-2, PageID.406-428). Of the grievances filed, only three were both related to the claims alleged in plaintiff's amended complaint and resolved through Step III: Grievance ICF-12-10-3360-17i ("3360"); Grievance ICF-12-10-3393-17i ("3393"); and, Grievance ICF-12-10-3496-17z ("3496").

### a. Plaintiff's claims against defendants Richardson and Greenfield

Plaintiff has exhausted two grievances against CO Richardson and Sgt. Greenfield.

### i. Grievances 3360 and 3393

In Grievance 3360, plaintiff complained that CO Richardson withheld his meal trays on September 12, 2012, that Richardson falsified a refusal on the door sheet, that he complained to Sgt. Greenfield, and that Greenfield did not take any action. Grievance 3360 (docket no. 94-7, PageID.484). Plaintiff also claimed that Richardson retaliated against him, i.e., that Richardson "withheld my meal solely to harass and retaliate against me for complaining to Sgt. LaBelle about him refusing to place me on observation watch after I informed him that I was suicidal." *Id.* This grievance was appealed through Step III. *Id.* at PageID.481.

In Grievance 3393, plaintiff made a similar complaint that Richardson withheld his meal trays on September 25, 2012, that Richardson falsified a refusal on the door sheet, that he complained to Greenfield, and that Greenfield did not take any action. Grievance 3393 (docket no. 94-7, PageID.437). Plaintiff also claimed that Richardson retaliated against him, i.e., that Richardson "denied my meal solely to retaliate and penalize me for complaining to Sgt. LaBelle about him refusing to place me on constant observation after I notified him that I was having thoughts of committing suicide" and that since that date Richardson withheld his breakfast and lunches on September 12, 2012, September 17, 2012, and September 20, 2012, and that this was "ongoing." *Id.* This grievance was appealed through Step III. *Id.* at PageID.434.

Defendants concede that Grievances 3360 and 3393 are properly exhausted against Richardson and Greenfield for withholding meal trays on September 12, 2012 (breakfast and lunch) and September 25, 2012 (breakfast and lunch). Defendants' Brief (docket no. 94, PageID.386-387). In his response, plaintiff relies on defendants' concession that Grievances 3360 and 3393 are exhausted and makes the conclusory statement "that all grievances relevant to this suit have been exhausted." Plaintiff's Response (docket no. 104, PageID.579-580). Plaintiff also stated that he "repeatedly complained" about Richardson's actions. Lee Aff. (docket no. 104-2, PageID.602). It appears that plaintiff is suggesting that Grievances 3360 and 3393 were "ongoing" grievances regarding the withholding of meals sufficient to exhaust all of his claims. This claim is without merit. The alleged acts took place over a seven month period, with the majority occurring in September 2012. There is no general rule which authorizes a prisoner to create an ongoing grievance. *See Siggers v. Campbell*, 652 F.3d 681 (6th Cir.2011) (requiring separate grievances for discrete violations).

Accordingly, this case should proceed on plaintiff's Eighth Amendment claims against CO Richardson and Sgt. Greenfield arising from the alleged withholding of food on September 12, 2012 and September 25, 2012, and plaintiff's First Amendment retaliation claims against CO Richardson for withholding food on those two dates.[2]

### ii. Grievance 3496

Plaintiff also filed Grievance 3496, claiming that Richardson withheld his meal trays on October 2, 2012. Grievance 3496 (docket no. 94-2, PageID.432). However, this grievance was not exhausted at Step III until April 25, 2013, nearly one month after plaintiff filed this action. *Id.* at PageID.429. The claim asserted in Grievance 3496 is not properly exhausted. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). Contrary to § 1997e(a), plaintiff did not properly exhaust Grievance no. 3496 prior to filing his complaint. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Rather he exhausted this grievance during the pendency of the suit. *See Freeman*, 196 F.3d at 645. Accordingly, defendants' motion for summary judgment should be granted with respect to this grievance.

---

[2] The Court notes that while defendants raise the issue of exhaustion with respect to the retaliation claim, they do not address exhaustion of this claim in any detail. Defendants' Brief (docket no. 94, PageID.383-387. Rather, defendants address the merits of the claim stating that "[f]or the purposes of this motion, defendants will concede that Lee's [sic] had filed grievances against Richardson prior to September 12, 2012, and that this was protected activity." *Id.* at PageID.395-396.

>    b.   **Plaintiff's claims against defendants LaBelle, Shroad, Turner, Ault, Huss, Stoddard, Finco and Heyns**

As discussed, the only exhausted grievances were directed at CO Richardson and Sgt. Greenfield. There is no evidence that plaintiff properly exhausted any grievances against defendants Sgt. LaBelle, Sgt. Shroad, PC Turner, ARUS Ault, Deputy Warden Huss, Warden Stoddard, MDOC Assistant Director Finco, or MDOC Director Heyns. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants' LaBelle, Shroad, Turner, Ault, Huss, Stoddard, Finco, and Heyns should be granted summary judgment for lack of proper exhaustion.

>    D.   **Eighth Amendment claims against Richardson and Greenfield**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff claims that defendants violated his rights under the Eighth Amendment. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Thus, the Eighth Amendment prohibits "'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'" *Moore v. Lowe*, No. 1:13-cv-1136, 2014

WL 905840 at *10 (W.D. Mich. March 7, 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981)). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

Here, plaintiff's only exhausted claims before the Court involve the alleged deprivation of two meals on September 12, 2012 and two meals on September 25, 2012. In his affidavit in support of the motion for summary judgment, CO Richardson denied that he refused plaintiff the opportunity to eat and noted that the Special Housing Unit Record (SHUR) indicates that plaintiff refused breakfast and lunch on September 12, 2012, and "did not accept" breakfast and lunch on September 25, 2012. *See* Richardson Aff. (docket no. 94-3, PageID.445-446); SHUR (docket no. 94-3, PageID.448, 450).

In his affidavit, plaintiff stated that on September 12, 2012, CO Richardson stopped at his cell while serving breakfast, stated "If you get hungry, you can eat my dick," and proceeded to the next cell without giving plaintiff an opportunity to eat. Lee Aff. at PageID.596. When Richardson proceeded to the next cell, plaintiff yelled "I want my tray" and "I did not refuse!" *Id.*

11

Richardson replied, "Well too bad, Fuckboy.  You should have thought about that before you tried ratting me out to the sergeant the other day."  *Id.*  Plaintiff stated that he notified Sgt. Greenfield during unit rounds, stating that Richardson withheld breakfast as a means of punishing him for complaining to Sgt. LaBelle and threatening to file a grievance against Richardson for taking away his yard privileges on September 8, 2012.  *Id.*  However, Sgt. Greenfield "approved and ratified" Richardson's actions by stating "It's called an I-MAX diet.  You'll live."  *Id.*  Plaintiff's affidavit did not provide information about the alleged withholding of food on September 25, 2012.

Viewing the evidence in the light most favorable to plaintiff, a question of fact exists only as to whether Richardson withheld food from him on September 12, 2012.  "[D]eliberate and unnecessary withholding of food essential to normal health can violate the Eighth Amendment." *Cunningham v. Jones*, 567 F.2d 653, 656, 660 (6th Cir. 1977).  However, temporary inconveniences of missed food do not amount to the deprivation of life necessities as measured by the contemporary standards of decency.  *See Cunningham v. Jones*, 667 F.2d 565, 565 (6th Cir. 1982) (noting that providing prisoner with one meal a day did not violate the Eighth Amendment); *Jones v. Carberry*, No. 2:08-cv-268, 2010 WL 1172562 at *6 (W.D. Mich. March 24, 2010) ("the withholding of five meals during a three day period and a withholding of water for a brief period of time, though it may result in some discomfort to the prisoner, absent special circumstances, does not result in a health risk to the prisoner sufficient to qualify as a wanton infliction of pain") (internal quotation marks omitted).  *Cf. Dellis v. Corrections Corporation of America*, 257 F.3d 508, 512 (6th Cir. 2001) (plaintiff's allegation that he was deprived of water for three days was not a "temporary inconvenience" under the Eighth Amendment).  Assuming that Richardson withheld plaintiff's breakfast and lunch on September 12, 2012, this brief withholding of food did not rise to the level

of an Eighth Amendment violation. Furthermore, there is no evidence that plaintiff was deprived of all meals on that date. In his affidavit, plaintiff points out that as a prisoner in segregation, he is entitled to three meals per day. Lee Aff. at PageID.594; MDOC Policy Directive 04.07.100 (eff. 12/28/2009) (docket no. 104-5). Plaintiff does not claim that his third meal was withheld on September 12, 2012. Accordingly, defendants Richardson and Greenfield should be granted summary judgment on the Eighth Amendment claim.

> **E.   First Amendment retaliation claim against Richardson**

To establish a retaliation claim, a prisoner must establish (1) that he engaged in protected conduct; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and, (3) that there is a causal connection between elements one and two, i.e, that the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants concede that plaintiff met the first element, because he engaged in protected conduct prior to September 12, 2012. *See* Defendants' Brief (docket no. 94, PageID.395-396). However, plaintiff has failed to meet the second element. The denial of occasional meals does not amount to adverse action sufficient to support a retaliation claim. *Ivory v. Bastian*, No. 2:10-cv-299, 2011 WL 766531 at *7 (W.D. Mich. Feb. 25, 2011). *See also, Jackson v. Pelkola*, No. 2:08–cv–20, 2009 WL 6849445 at *3 (W.D. Mich. Oct. 29, 2009), report and recommendation adopted, 2010 WL 3609513 (W.D. Mich. Sept. 13, 2010) ("mere comments and the denial of a single meal are not sufficiently adverse to deter a person of ordinary firmness from engaging in

protected conduct"). Accordingly, defendant Richardson should be granted summary judgment on the First Amendment retaliation claim.[3]

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 93) be **GRANTED** and that this action be **TERMINATED**.

Dated: August 8, 2016            /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] Having concluded that defendants are entitled to summary judgment due to lack of exhaustion and the absence of a constitutional violation, the undersigned finds it unnecessary to address the other arguments raised in defendants' supporting brief.